UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-2750

_____

S. M., by and through his parents, Michael C. and Danielle C.;
Michael Ciavarelli; Danielle Ciavarelli

v.

CHICHESTER SCHOOL DISTRICT,
                                                      Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-04266)

_____

**SUR PETITION FOR REHEARING**

_____

Present: CHAGARES, *Chief Judge*, HARDIMAN, SHWARTZ, KRAUSE, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, FREEMAN, MONTGOMERY-REEVES, CHUNG, BOVE, MASCOTT, and MCKEE[*], *Circuit Judges*

The petition for rehearing filed by the Appellant in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court en banc, is denied.

_____

[*] Judge McKee's vote is limited to panel rehearing.

Judge Mascott would have granted rehearing and will file a dissent from this order denying rehearing.

BY THE COURT,

s/Theodore A. McKee
Circuit Judge

Dated: June 15, 2026
Lmr/cc: All Counsel of Record

*S.M. v. Chichester Sch. Dist.*, No. 25-2750
MASCOTT, *Circuit Judge*, dissenting sur denial of panel rehearing.

I dissent from the denial of rehearing. Here, the District Court plowed over the judgment of the local school district and administrative officials to order enrollment of appellee in one, and only one, specific private school.[1] That enrollment is to continue for a period of years, beyond appellee's twenty-first birthday and without any ongoing annual review or reevaluation of the best fit and outcome for the student as he continues to grow.[2]

This mandating of detailed, finely grained educational policy determinations is not the proper role of federal courts.[3] And it is not consistent with the statutory command and textual purposes of the Individuals with Disabilities Education Act (IDEA).[4]

The matter before us has a long and tangled history. The best interests of appellee and his educational needs have hung in the balance. Even after the local school district

---

[1] *See S.M. v. Chichester Sch. Dist.*, No. CV 21-4266, 2025 WL 2404383, at *9 (E.D. Pa. Aug. 19, 2025) (explaining and delineating the District Court's order).

[2] *Id.* at **1, 9-10.

[3] *See, e.g., Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017) ("Any review of an [Individualized Education Program] (IEP) must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." (emphasis in original)); *Hendrick Hudson District Bd. of Education v. Rowley*, 458 U.S. 176, 206 (1982) (observing that authorization of judicial review in the Individuals with Disabilities Education Act "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review"). *See also id.* (noting that congressional goals in IEP preparation "would be frustrated if a court were permitted simply to set state decisions at nought").

[4] *See, e.g.*, 20 U.S.C. § 1400(d)(1)(C) ("The purposes of this chapter are . . . to assist States, localities, educational service agencies, and Federal agencies to provide for the education of all children with disabilities . . . ."); *id.* § 1414(d)(4)(A) ("The local educational agency shall ensure that . . . the IEP Team—(i) reviews the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved; and (ii) revises the IEP as appropriate to address . . . any lack of expected progress . . . [;] the child's anticipated needs; or . . . other matters.").

achieved admission of appellee to a full-time residential educational facility and committed to fund the placement, the lower court on prior review rejected that determination, preferring placement in a different residential facility.[5] In the most recent revisiting of this case, our courts' decisions have now, further, mandated this placement for numerous years without review.[6]

Detailed educational policy determinations and close judgment calls are not within the best expertise of the judiciary.[7] They are not even within the best expertise of federal policymakers.[8] Which is why the text and structure of the IDEA embody a system where the federal government financially *supports*, and guarantees resources for, quality education for children with unique needs, but leaves on-the-ground efforts to state and local officials to establish, determine, and carry out those plans in coordination with parents.[9]

---

[5] *See S.M. v. Chichester Sch. Dist.*, No. CV 21-4266, 2024 WL 4438472, at **5-7 (E.D. Pa. Oct. 7, 2024) (criticizing and rejecting, for example, the vocational mathematics educational instruction and technique at the facility at which appellant had orchestrated an offer of admission and would have provided funding). *Contra Rowley*, 458 U.S. at 207 ("[C]ourts must be careful to avoid imposing their view of preferable educational methods upon the States.").

[6] *See, e.g.*, *S.M.*, 2025 WL 2404383, at **9-10.

[7] *See Endrew F.*, 580 U.S. at 393 (explaining that the U.S. Supreme Court has "rejected the view that the IDEA gives courts *carte blanche* to impose upon the States whatever burden their various judgments indicate should be imposed" (internal quotation omitted)); *Rowley*, 458 U.S. at 208 ("[C]ourts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." (internal quotation omitted)).

[8] *See, e.g.*, Rowley, 458 U.S. at 206 (finding that a reviewing court must give "due weight" to state administrative proceedings in administration of IDEA standards and programs); *id.* (reasoning that nothing in the Act suggests that "reviewing courts should have a free hand to impose substantive standards of review which cannot be derived from the Act itself").

[9] *See, e.g.*, 20 U.S.C. § 1400(d)(1)(B)-(C) (describing the rights of children and parents and federal assistance for States and local educational agencies "to provide for the education of all children with disabilities"); *id.* § 1400(d)(2) (referring to assistance for States in

2

I would reject the District Court's specific mandate here and order it to remand to local and state officials for their administration of appellee's Individualized Education Program under the IDEA.

---

implementation of an adjacent statewide interagency system for early intervention for infants and toddlers with special needs and their families); *id.* § 1400(d)(3) (describing a purpose of the IDEA as "ensur[ing] that educators and parents have the necessary tools to improve educational results for children with disabilities"); *id.* § 1417(b) ("Nothing in this chapter shall be construed to authorize an officer or employee of the Federal Government to mandate, direct, or control a State, local educational agency, or school's specific instructional content, academic achievement standards and assessments, curriculum, or program of instruction."). *See also Rowley*, 458 U.S. at 208 ("Congress'[s] intention was not that the Act displace the primacy of States in the field of education, but that States receive funds to assist them in extending their educational systems to the handicapped.").